McClintock *vs.* Rogers.

ROBERT McCLINTOCK, plaintiff in error, *vs.* DAVID ROGERS, defendant in error.

*Error to Pike.*

In construing a patent from the United States, which describes the land granted by the number of the section, township and range, Courts will look to the plat and field notes, made and returned to the Surveyor General, by the government surveyors, in order to locate the land.

The lines actually run upon the ground by the original surveyor, become the true external boundaries of all the lands sold by the government, if they can be ascertained by reference to the monuments erected upon the land by the surveyor.

The monuments erected upon the land are facts; the field notes and plat returned by the surveyor, indicating course, distance and quantity, are but description, which serve to assist in ascertaining those facts.

Established monuments not only serve to show with certainty the boundary of the tract upon which they are erected, but may be resorted to, in connection with the field notes and other evidence, to fix the original location of a monument or line which has become lost or obliterated by time, accident or design.

The law cannot satisfactorily determine, in all cases, whether course or distance shall control, when they do not correspond; this must be determined by concurring testimony, and the circumstance of each particular case. The one that convinces the judgment most must be selected.

The monuments erected at the two extremities of a township line, are not entitled to a more controlling influence, in determining the actual location of the intermediate line, than the section corners established along the line, if they can be found.

Where a township line is lost, the monuments of the adjacent sections may be resorted to for the purpose of ascertaining where the lost line was actually run by the original surveyor.

A township line is not necessarily straight in all cases: a deflected line, if established by satisfactory evidence, will be adopted by the Court as the true line originally run by the government surveyor.

Quantity, although the least reliable, and the last to be resorted to, of all descriptions in a grant or deed, in determining the boundaries of the premises conveyed, may some times be considered in corroboration of other evidence.

This was an ejectment, to recover the east half of the southeast quarter of section thirty-one, township five south, range four west, brought by David Rogers, the defendant in error, against Robert McClintock, the plaintiff in error, and tried before Mr. Justice Purple, without the intervention of a jury, at the April term, 1848, of the Pike Circuit Court.

The declaration being filed, the defendant pleaded the general issue, upon which issue was joined. At the September term, 8471, the cause was, by consent, submitted to the Court, for trial, and the evidence being heard, the cause was taken under advisement. At the September term, 1847, the following order was made, by consent:

"It is ordered by the Court, that George M. Richards, of Morgan county, make a survey of the township line, between townships five and six south, of range four west of the fourth principal meridian, and make a plat, with metes and bounds, of how much of the enclosure of the said defendant, Robert McClintock, lies on the north side of said line, and on the south-east quarter of the south-east quarter of section thirty-one, township five south, range four west; and that when said survey is made and platted, the plat thereof shall be returned by the said Richards to this Court, at its next term. It is further ordered, that the said Richards, before proceeding to make said survey, shall take an oath before the clerk of this Court, that he will, according to the best of his skill and ability, well and truly run and ascertain said line, and make a just and true plat thereof, and of so much of the enclosure of the said defendant, Robert McClintock, as lies on the north side thereof. And by the further agreement of the said parties, it is ordered by the Court, that each of said parties pay one half of the costs of said survey."

At the April term, 1848, the following agreement was made between the plaintiff and defendant:

"It is admitted by the parties in the above cause, that the corners of the township line, between townships five and six south, four west, are truly indicated by the letters A and B, on the survey made by George M. Richards, a plat of which is filed herewith, and marked (X,) and that the corners marked with the letters A and B in said plat, are the true corners of the township line between the townships aforesaid. It is further admitted, that the report made by the said George M. Richards, marked exhibit (R,) and filed in this case, and all the statements contained in said report, shall be received in evidence in this cause, and, upon the trial, shall have precisely the same force and effect given to them—neither more nor less—that they would be

# PLAT X.

Township corner the same point from which D Johnson started and as made by the original witness trees remains of which I found.

8° 24' V. Variation

Town 6 S.4W.

Sec 36
Sec 35
Sec 34 — On this Section there was one Out measured & not counted by original Surveyors
Sec 33
Sec 32
Sec 31

Sec 1
Sec 2
Sec 3 — 16.57'  5 & 6 S.4.W.
Sec 4
Sec 5
Sec 6

5 & 6 S.4.W.

Straight line between corner at 5 & 6 S.4.W.
True line between

No variation

Original Corner
Original Corner
Original Corner

Var 7° 59'
Var 7° 42'
Var 7° 50'
Var 8° 24'

Rock J
Rock E

40.83
40.00
41.58
41.56
40.00
40.00

4051
4051

657 lks
80.00
80.00
80.00

85.00
270 lks
88.00
351 lks

D 55 Links Offset

Sec 8..

80.00 ch.
775

entitled to receive if the said Richards had been called and sworn as a witness on the trial, and deposed to the same facts stated in said report. And it is agreed by and between the parties aforesaid, that the above facts shall be submitted to the Court, without the intervention of a jury, and if, upon the trial of the cause, the Court shall be of opinion that the deflected line established by the said survey of the said George M. Richards, is the true line between the said townships, then the Court shall enter judgment against the said defendant for the land in his possession, north of said deflected line, according to the said plat and report of the said George M. Richards. But if the said Court shall be of opinion that a straight line between the corners indicated by the letters A and B, on the plat aforesaid, is the true line between said townships, then judgment is to be entered against the said defendant for so much land only as may be in his possession on the north side of said straight line, &c. It was further admitted, that the township line aforesaid has been run by David Johnson, county surveyor of Pike county, Illinois, and that his survey corresponds with the survey above mentioned, as made by the said George M. Richards. It was further admitted, that the dotted line on the plat (X,) made as aforesaid, by the said George M. Richards, indicates a straight line between the township corners A and B, denoted on said plat; and that said dotted line has been run by Z. N. Garbutt and M. J. Noyes, and that they concur with Richards and Johnson, in adopting the points A and B, as the true corners of said township line, but differ with them in running the line between said points; said Garbutt and Noyes establishing a straight line between said corners A and B, as the true township line, instead of the deflected line established by the said Richards and Johnson.

The annexed plat, marked (X,) is a true copy of the plat of the survey made by the said George M. Richards, and referred to in the above agreement as exhibit (X.) Accompanying said plat was the following report of the said Richards, referred to in the agreement aforesaid as exhibit (R.)

" In pursuance of the order made by the Circuit Court in and for the county of Pike, and state of Illinois, at the September term thereof, A. D. 1847, in a certain cause therein pending,

wherein David Rogers is plaintiff, and Robert McClintock defendant, after being first duly sworn, as directed by said order, I, George M. Richards, of Morgan county, Illinois, report: that I made a survey of the township line between townships five and six south, range four west of the fourth principal meridian, as follows: I commenced at the township corners between townships five and six south, range four west, and townships five and six south, range three west, at a stake and rock previously set there, and now ascertained by me to be the true corner, by actual survey, by lines run from established corners, on the township line north of said corner, and by the witness trees for said corner, the stumps of which were found by me; (said corner is marked A on the foregoing plat;) thence west, with a variation 5° 48′ east, 496.74 chains, to the township corner between five and six south, five west, and five and sixth south, four west; said corner, as now made by me, being the same previously established, and now verified by me, by finding one witness tree now standing, and the roots of the other agreeing in course and distance with original field notes, and by runs north of said corner on township line; said township corner being marked B on the foregoing plat. This distance between the township corners A and B, as shown by the original field notes of the said township line, is 489.15 chains; showing a difference of 7.59 chains between length of township line, as run on the ground by me, and as shown by the original field notes, and showing that a distance had been passed over on said township line by the original surveyor, which is not shown by his field notes, and which made a reference to the corners and lines on the north and south side of said township line necessary, in order to ascertain where this excess of distance had been thrown by the original surveyor, there being no original corners or witness trees to be found upon said township line, excepting those marked A and B, on the foregoing plat, at each extremity of that line.

"I therefore returned east on said township line, and by measurement and observation, I ascertained that five chains of this excess of length had been thrown, in the original survey, into the width of section thirty-four, township five south, range four west; said section measuring eighty-five chains east and west on its south line, instead of eighty chains; the rest of said excess being distributed over other parts of said township line.

This rendered it necessary to refer to the corners north and south of said township line, in order to establish said line and the corners thereon, as originally run by the United States surveyors ; and in the course of the surveys necessary to establish said line and corners, I became satisfied that the township line between townships five and six south, range four west, was not run straight across said township, and, consequently, should now be run and established only as originally made, if its original position could be ascertained. To determine how this had been run, I commenced surveys from corners north and south of said line, as shown by the foregoing plat ; I went to the corner between sections nineteen, twenty, twenty-nine and thirty, five south, four west, and established it at a stake set by D. Johnson, the county surveyor of Pike, named in another part of this record, and found by me to be correct, by reference to one witness tree and the remains of the other, (this corner is marked C on the foregoing plat,) thence 40.55 chains south, with variation of 7° 50′ east, to corner established by reference to the stumps of the witness trees, with the foot marks on them, found by me ; thence south, with same variation, 40.50 chains, to corners between sections twenty-nine, thirty, thirty-one and thirty-two, township five south, range four west, to corner, as previously established, and found to be correct by the witness trees, one of which is now standing, and the remains of the other found by me, (this corner is marked H on the foregoing plat;) thence 40 chains, with a variation of 7° 42′ east, to a stone set by the said D. Johnson ; thence south, with same variation, 40 chains, to a stone planted by me as the corner between sections thirty-one and thirty-two, township five south, range four west, (marked D on the foregoing plat;) thence I went to a rock at corner of sections five, six, seven and eight, township six south, range four west, which I satisfied myself was correctly planted as said corner, and which was agreed to by plaintiff and defendant as the true corner, (and is marked E on the foregoing plat;) thence north, with a variation of 8° 24′ east, 81.56 chains, to the township line near corner marked D on the foregoing plat, falling 17 links short of distance called for by the original field notes. I ran this line with a variation of 8° 24′ east, to make it parallel with the east line of section five, township six south, range four west, as was originally done, and I made the offset, west from

corner D, at sections thirty-one and thirty-two, township five south, range four west, 54 links—the original field notes showing 61 links offset, west from corner of sections thirty-one and thirty-two, township five south, range four west, to corner of sections five and six, township six south, range four west. I also went to corner of sections twenty-eight, twenty-nine, thirty-two and thirty-three, township five south, range four west, (marked F on the foregoing plat,) and established the corner by reference to witness trees, the remains of which I found at a rock previously set there; thence, with a variation of $7^{\circ}$ $59'$ east, 40.83 chains, to a rock previously set and verified by me, by witness trees found by me; thence, with the same variation, 40 chains, to township line, as shown on the foregoing plat at G; thence I went to a corner between sections four, five, eight and nine, township six south, range four west, at a rock, which I was satisfied was correct, and which was agreed on as the correct corner by the said plaintiff and defendant; thence north, with a variation of $8^{\circ}$ $24'$ east, 40.91 chains, to a stake previously set, and now verified by me as the corner; thence, with same variation, north, 41.58 chains, to township line near G on the foregoing plat—exceeding distance shown by the original field notes 17 links, and falling west of the corners of sections thirty-two and thirty-three, township five south, range four west, at G, on foregoing plat, 3.51 links, (the original field notes not showing what the offset was, from the corner of sections thirty-two and thirty-three, township five south, range four west, as marked G on the foregoing plat.) This gives to sections five and six, in township six south, range four west, their full complement, as called for by the original field notes, and the computation of the quantity in them, as made by the original surveyor; and, also, gives the complement, according to said original computation, to sections thirty-one and thirty-two, township five south, range four west. A straight line from A to B, across said townships, would throw a large excess of quantity into sections five and six, township six south, range four west, while sections thirty-one and two, township five south, range four west, would fall a great deal short of their quantity, and the line between thirty-one and thirty-two, township five south, range four west, would be $8^{\circ}$ 30 chains shorter than the distance called for by the original field notes, and the line between sections five and six, township

six south, range four west, would be made 8° 30 chains longer than is called for by the original field notes. The mode adopted by me makes these lines agree with original field notes, on the north, exactly, and on the south of the township line, within 17 links. I have therefore established the township line between townships five and six south, range four west, as follows : from township corner marked A on the foregoing plat, west, with a variation of 6° 57' east, to a rock set by me at the corners of sections thirty-one and thirty-two, township five south, range four west, at the point marked D on the foregoing plat, 405.12 chains; thence from said rock at D, west, with a line of no variation, 91.62 chains, to township corners between townships five and six south, range four west, and townships five and six south, range five west, marked B on the foregoing plat; and believe this to have been the line run by the originial surveyor, and not a straight line, as shown by the original field notes.

"From the stone placed by me at the corner of sections thirty-one and thirty-two, five south, four west, an elm, eight inches in diameter, marked with a blaze and two notches on each side, bears north 4.97 chains from said stone, marked D on the foregoing plat; and from this point I ran out the enclosure of the defendant, Robert McClintock, which lies upon the north side of said township line, and upon the south-east quarter of the southeast quarter of section thirty-one, town five south, four west, and report, that in said McClintock's enclosure there are three acres and fourteen hundredths of an acre on the north of said township line; and upon said south-east quarter of the southeast quarter of section thirty-one, township five south, four west, bounded as follows, to wit : beginning at said rock at the corner between sections thirty-one and thirty-two, five south, four west, marked D on the plat aforesaid; thence north ten chains seventy-seven links; thence west two chains ninety-two links; thence south ten chains seventy-seven links ; thence east two chains ninety-two links, to the place of beginning.

"These surveys were made in the presence of the said plaintiff and defendant, and were completed on the 23d day of September, A. D. 1847.

" The plat accompanying this report, marked (X,) shows the township line as established by me, the courses and distances upon and adjoining said line, and a plat, by metes and bounds,

of section thirty-one, five south, four west, and the part thereof now in the possession of the said defendant, Robert McClintock, dated September 23, 1849.

"GEORGE M. RICHARDS, *Surveyor.*"

It was admitted by the defendant, Robert McClintock, that the plaintiff was the owner in fee of the east half of the southeast quarter of section thirty-one, five south, four west, and that the said Robert McClintock was in possession of three and fourteen hundredths acres of said parcel of land, as described by metes and bounds, in the report of the aforesaid George M. Richards. The defendant then gave in evidence the following plat and field notes, of the original survey, certified from the Surveyor General's office for the states of Illinois and Missouri:

PLAT (Y.)

| 4973 | Town. 5, South of the base line, Range 4, West of the 4th Principal Meridian. | | | | | | |
|---|---|---|---|---|---|---|---|
| 600 | Sec. 31 | Sec. 32 | Sec. 33 | Sec. 34 | Sec. 35 | Sec. 36 | |
| 8000 | 4915 | 61 | a | 270 | 174 | 157 | N 285 |
| | 4173 b | 4158 c | 4180 d | 4119 e | 4095 f | 4000 | |
| 715 | Sec. 6 4915 | Sec. 5 | Sec. 4 | Sec. 3 | Sec. 2 | Sec. 1 | |
| | Township 6, South of the base line, 4 West of the 4th Principal Meridian. | | | | | | |

a The notes of the line between secs. 4 and 5 call for intersecting the township line at 8158 chains, but do not state whether east or west of the said township line.
b P. oak, 13 S. 10 W., 460.  P. oak, 13 S. 77 E.  424.
c Hick. 15 south, 49 west, 29.  Hick. 16 north 25 west, 158.  d Post.
e Hick. north 78, west 57 links.  f Post on mound.

The field notes above referred to are in the words and figures following, that is to say:

"Beginning at a post, corner of ranges four and five west, townships six and six and five and five south, sections one, six, thirty-one, thirty-six, from which a C. oak, ten inches in diameter, bears north sixty degrees, west twenty-nine links; C. oak, fourteen inches in diameter, bears south sixty-three degrees, east nineteen links; thence east, on a random line between townships five and six south, range four west, sections six and thirty-one, 489.15 chains; intersects the range line between ranges three and four, two hundred and eighty-five links north of the corner, to sections one, six, thirty-one and thirty-six,

townships five and six south, ranges three and four west; which is a post, from which a C. oak, 12 inches diameter, bears north seventy-seven degrees, west 24 links, and hickory 12 inches diameter, bears south three degrees, east 12 links. December 24th.

Thence west, between T's 5 and 6 S., R. 4 W., sections 1 and 36, on a true line, 1.15 chains—creek, 15 links wide, course south.

| | | |
|---|---|---|
| 14.00 | chains, | prairie; |
| 40.00 | " | set half section posts—prairie; |
| 80.00 | " | set post corner of sections 35 and 36, T's 5 S., 4 W., prairie—over prairie. |

West, between T's 5 and 6 S., R. 4 W., sections 2 and 35.

| | | |
|---|---|---|
| 15.00 | chains, | timber land; |
| 35.60 | " | creek, 20 links wide, C. S.; |
| 40.00 | " | set half section post, from which a hickory, 10 inches diameter, bears S. 50°, E. 14 links, and a W. oak, 10 inches diameter, bears N. 42°, W. 18 links; |
| 53.00 | " | prairie; |
| 80.00 | " | set post corner of sections 34 and 35, R. 4 W., T. 5 S.—prairie—over prairie and barrens, timber, oak, &c. |

West, between T. 5 and 6 S., R. 4 W., sections 3 and 34.

| | | |
|---|---|---|
| 40.00 | chains, | set half section post—brushy barrens; |
| 80.00 | " | post corner of sections 33 and 34, R. 4 W., T. 5 S.—prairie, over brushy barrens and prairie. |

West, between township 5 and 6 south, range 4 west, secs. 4 and 33.

| | | |
|---|---|---|
| 40.00 | chains, | set half section post—prairie; |
| 80.00 | " | set post corner of secs. 32 and 33, R. 4 W., T. 5 S.—prairie—over prairie. |

West, between sections 5 and 32, T's 5 and 6 S., R. 4 west.

| | | |
|---|---|---|
| 40.00 | chains, | set half section post, from which a hickory, 6 inches diameter, bears N. 53°, W. 49 links, hickory 4 inches diameter, bears S. 83°, E. 36 links. December 25th. |
| 80.00 | " | set post corner of sections 31 and 32, R. 4 W., T. 5 S.—prairie—over bushy barrens and prairie oak. |

West, between townships 5 and 6 south, range 4 west, sections 6 and 31.

40.00 chains, set half section post—prairie;

63.00   "   timbered land;

89.15   "   intersects the range line between ranges 4 and 5, at the corner—over prairie, barrens, timber, oak, &c."

The plaintiff, David Rogers, then admitted that the defendant, McClintock, was the owner in fee of the north-east north-east quarters, section six, township six south, range four west. This was all of the evidence offered, either on the part of the said plaintiff or defendant. The Court having duly considered the same, found the issue in favor of the said plaintiff below. The defendant below then moved the Court for a new trial, because the verdict was against the law and evidence; which motion was overruled by the Circuit Court, and a judgment rendered in favor of the plaintiff, upon the finding aforesaid, for three and fourteen hundredths acres of the lands mentioned in the declaration aforesaid, and particularly described in the report of the said George M. Richards, upon which a writ of possession was awarded, &c. The defendant thereupon took his bill of exceptions to the opinion of the Court, in finding for the plaintiff, overruling motion for new trial, and in rendering judgment for plaintiff, and assigns for error the said several decisions of the Court.

BROWNING & BUSHNELL, for plaintiff in error:

The only question presented for decision in this case is, whether the township line which separates townships five south, and four west, and six south, four west, is a straight or a crooked one. We contend: 1. That under the laws of Congress providing for surveys of the public lands, and the various instructions, at different times, given thereon, there can be no such thing as a deflected township line. The act of 18th May, 1796, provides that the public lands "shall be divided by north and south lines, run according to the true meridian, and by others crossing them at right angles, so as to form townships of six miles square." Land Laws, Part 1, page 50. It is hardly necessary to remark that a square cannot be enclosed by deflected lines. The same provision is contained in the act of March

26, 1804. Land Laws, Part 1, 104. And in the act of 11th February, 1805. Land Laws, Part 1, 119. It will be perceived from an examination of the laws above cited, that township corners are to be first established, and township lines first run, and that all subdivisions of a township are to be controlled by, and conformed to these first established corners and lines, and that all lines, whether of a township, section, or quarter section, are required to be straight. The township line is to be a straight one, running from corner to corner, the whole length of the township, and where the township is to be sectionized, the very first command of the law is, to plant the section corners one mile distant from each other, on the township line, which has before been ascertained. See instructions from Commissioner of the General Land Office to the Surveyor General. Land Laws, Part 2, 918, 941, 971.

2. The rights of the parties in the land in controversy, must be determined by the original survey, made under the authority of the government, and returned to the office of the Surveyor General; and according to that survey, the disputed township line was a straight one, running through the entire length, from corner to corner; and it cannot now be varied to suit the interests or caprice of purchasers. To permit it to be done would be to annul the authority of all the public surveys; obliterate the lines of demarcation between the property of man and man, and open wide the door to confused, harrassing, and endless litigation. See plat and field notes from the office of the Surveyor General.

3. The original township corners at the extremities of the disputed line, are found, recognized and admitted. There is no doubt or dispute about them, and when the section corners upon that line are obliterated and cannot be found, the proper mode of reascertaining their position is, to begin at the corner at the eastern extremity of the township line, and run by the field notes the proper distances west, throwing any excess or deficiency of quantity on the western side of the township. See Land Laws, Part 2, 919.

4. The only reason given by Richards, the surveyor, for fixing the section corner south of a direct line between the ascertained township corners, is to equalize distance and quantity. Now it is a settled rule in the construction of grants, that both course and distance must give way to natural or artificial mon-

37

uments or objects; and courses must be varied, and distances lengthened or shortened, so as to conform to the natural or ascertained objects or bounds; and where the monuments are fixed, known, and unquestionable, although neither course, distance, nor quantity correspond, the monuments must govern. And in government surveys, especially where corners are ascertained, they must control courses, distances and quantity. Wynne vs. Alexander, 7 Iredell, 238; Sturgeon vs. Floyd, 3 Rich., 84; Bruckner's lessee vs. Lawrence, 1 Doug., 30; Fulwood vs. Graham, 1 Rich., 491; Alshire's lessee vs. Hulse, Wright's Ohio Rep., 172; Avery's lessee vs. Baum's heirs, ibid, 576; Jackson vs. Cole, 16 Johns., 262; Jackson vs. Freer, 17 Johns., 31; Hagan et al. vs. Campbell & Cleaveland, 8 Porter, 31; Hallet et al. vs. Hunt, 7 Ala. Rep., 905; Lewen vs. Smith, 7 Porter, 435; Newman vs. Foster's Heirs, 3 How. Miss., 391; Surget vs. Little, 5 Smedes and Marsh., 332; Campbell vs. Clark, 8 Mo., 553; Hough vs. Hoon et al., 4 Dev. and Bat., 230; Hare vs. Harris, 14 Griswold, Ohio, 536; Pernam vs. Wead, 6 Mass., 132; Preston's Heirs vs. Bowman, 2 Bibb, 495; 5 Cond., 195; Folger vs. Mitchell, 3 Pick., 401; How et al. vs. Bass, 2 Mass., 382.

J. GRIMSHAW, for defendant in error:

The point to be settled in the case is, which is the correct line between township five south, range four west, and township six south, range four west, (see plat,) A B or A D B, and correct corner between sections thirty-one and thirty-two, township five south, range four west, this being one of the points on that line, as originally run. Defendant in error contends that line A D B is the correct line, and corner D the correct corner; that point D is the point originally established as section corner of thirty-two, and as such must now be established as the corner, although not on a right line between township corners.

1. It is a question of fact to be determined, how was this line originally run by the surveyors of the United States government. If that fact can be ascertained, it must determine this case. Bleeker's map of Hosick's patent held never to be conclusive in opposition to true lines, founded upon his actual survey. Jackson vs. Joy, 9 Johns., 103. The map necessarily shows the lots of equal size, and shows their relative locality. The

Legislature must have contemplated that field books should accompany the map. Jackson *vs.* Cole, 16 Johns., 260. The actual survey must be deemed part and parcel of the description of lot. Ibid. The government might have had the surveys reexamined before the patents issued : it is now too late to attempt to correct mistakes. Jackson *vs.* Cole, 16 Johns., 264. A proprietary surveyor held not to be agent of people whose lands he surveyed, but of proprietor alone. Such surveyor could not bar title by his return, which was vested by actual survey. The courses and distances on the ground are the true survey. Lilly *vs.* Kitzmiller, 1 Yeates, 29 ; Yoder *vs.* Fleming, 2 Yeates, 311. A line proved, although deviating from a right line, must be the boundary. Lyon *vs.* Ross *et ux.*, 1 Bibb, 466. Parol evidence admitted to show that course and boundary in the survey and patent, are otherwise on the ground. Mageehan *vs.* Adams' lessee, 2 Binney, 109 ; Wallace *vs.* Maxwell, 1 J. J. Marsh., 451. Same points decided in Hall *vs.* Powell, 4 S. & R., 462 ; Philips *vs.* Shæffer, 5 S. & R., 215. Original marked trees must govern, where they can be found. If not, courses and distances must be resorted to, as the next best rule. Sumter *vs.* Bracey, 2 Bay, 516 ; Chenoweth *vs.* Lessee of Haskell, 3 Peters, 96. The original surveys establish rights of parties, and must govern. May *vs.* Baskin, 12 Smedes and Marshall, 429, 430. The north-east and south-west corners of patent claim established, held that law would fix north-west corner at intersection of lines extended according to patent courses, from north-east and south-west corners, unless some other point had been fixed on by original survey. Wishart *vs.* Crosby, 1 Marshall, 381 ; Thornberry *vs.* Churchill *et ux.*, 4 Monroe, 35. Where there is an ascertained place of beginning, the grant must be confined to boundaries given in the deed. Jackson *vs.* Wilkinson, 17 Johns., 156 ; Jackson *vs.* Wendell, 5 Wendell, 146. The corners of sections on township lines were made when the township was laid out. They became fixed points, and if their position can now be shown by testimony, these points, must be retained, although not in a straight line from A to B. The township line was not run as a single sight from A to B : it was run mile by mile, and these mile points are as sacred as the points A and B. Land Laws, vol. 1, 50, 71, 119, 120. The sections on the north and west side of the township receive ex-

cess and give way in size, if there is any excess or deficiency in the township. They are to close up to the township line wherever it was placed. See act of 1800, Land Laws, vol. 1, sec. 3, p. 71.

A mathematical line is defined to be length without breadth: it exists only in the mind. A surveyor's line has a local habitation: it consists of a series of marked or established points on the ground, approaching a right line, according to the skill and correctness of the surveyor and perfection of his instruments. An actual township line consists of a series of section corners, never in point of fact falling in a right line from township corner to township corner. When these corners are gone, we resort to the next best evidence to ascertain where they were originally placed. The best evidence in this case of the position of the corner D, is its distance from the original corners, shown on the plat, north and south of it, at the exact distances called for by the field notes.

Testing the survey of Richards by these rules, it will be found to have been made in accordance with them. He followed the original corners and lines, when found, and when not found, courses and distances from field notes.

2. For acts of Congress under which surveys in the Military Tract were made, see act of May 18, 1796, Land Laws, vol. 1, 50, secs. 1, 2; act of May 10, 1800, ibid, 70, secs. 1, 2, 3; act of March 26, 1804, ibid, 104, sec. 1; act of Feb. 11, 1805, ibid, 119, sec. 1, 2, vide sec. 2, 2d, act of May 6, 1812, ibid, 214. The act of April 29, 1816, ibid, 278, created the office of Surveyor General for Missouri and Illinois. These acts were directory to the surveyors as government employees or agents; but if they disregarded them, the surveys they actually made must now be followed. See authorities cited above.

3. Statutes directing the mode of proceeding by public officers, are advisory, and not essential to the validity of the proceedings themselves, unless so expressed. Holland vs. Osgood, 8 Vermont, 280. A statute specifying a time within which a public officer is to perform an official act, regarding the rights and duties of others, is directory, unless the nature of the act to be performed, or the phraseology of the statute, is such that the designation of time must be considered as a limitation of the pow-

er of the officer. People *vs.* Allen, 6 Wend., 486; Jackson *vs.* Young, 5 Cow., 269.

4. The decision of the Circuit Court in this case, upon the evidence, should have the same weight. As the law gives it the same effect as a verdict of a jury, the Court should not disturb it. Dawson *vs.* Robbins, 5 Gilman, 72.

R. S. BLACKWELL, on same side:

It is insisted that the only question ,for the determination of this Court is, whether the township line between five and six south, four west, is straight or deflected. We do not decline the argument of that question, but, at the same time, contend the real issue is as to the true boundary between section thirty-one, township five south, four west, and section six, township six south, four west. The acts of Congress, it is true, require a straight line. But this is only directory to the surveyor. Hunt *vs.* McHenry, Wright, 599; Bayless *vs.* Rupert, Wright, 634. "A mathematical line never was run in making any survey, and is impossible to be ascertained with perfect precision and certainty, by any human means." Cowen *vs.* Fauntleroy, 2 Bibb, 261–2. It is, therefore, the established rule, that the line actually run by the surveyor, as ascertained by the monuments erected by him upon the land, are to control in all cases of disputed boundaries. The plat and field notes returned by the surveyor, are not conclusive as to where the lines of the survey were run, and the corners of each parcel of land established. The survey is the original work; the plat is derived from, and intended to be a faithful representation of it. If the plat fails to give a correct description of the actual survey, the latter is to govern. Herbert *vs.* Wise, 3 Call, 211, top page; Conn *vs.* Penn, 1 Peters' C. C. R., 511–12; Esmond *vs.* Tarbox, 7 Greenleaf, 61; Cowen *vs.* Fauntleroy, 2 Bibb, 261; Cleveland *vs.* Smith, 2 Story, 288; Van Wyck *vs.* Wright, 18 Wend., 168; Campbell *vs.* Clark, 8 Mo., 553; Walker *vs.* Smith, 2 Barr, 43; Hall *vs.* Tanner, 4 Barr, 244; Voorhees *vs.* De Myer, 3 Sandf. Ch., 614, cited 2 An. U. S. Dig., 61, sec. 1. Therefore, if the actual survey, as ascertained by the monuments, show a deflected line, it is to be regarded as the true one. Baker *vs.* Talbott, 6 Monroe, 182; Baxter *vs.* Evett, 7 Monroe, 333–4.

Where was the township line in controversy actually run? It was the duty of the surveyor to mark the township line, by erecting section corners along that line. The plat and field notes show that this was done. But the monuments have been destroyed, and no traces of them remain. How, then, is the original location of the township line to be ascertained. It is obvious that the next best evidence must be resorted to. Lewen vs. Smith, 7 Porter, 435. It is insisted by the plaintiff in error, that the township corners are to control, and that a right line must be run from corner to corner. This is nothing more than a resort to the course called for in the plat and field notes, which is the weakest and most unsatisfactory kind of evidence. 1 Richardson, 497; 1 Greenl. Ev., 369, sec. 301, note 2. Again, the township corners are of no greater validity, in fixing the boundary of the survey, than the section corners. Wishart vs. Crosby, 1 A. K. Marsh., 383. Each section is independent of every other section in the township, and must be governed by its own marked and established corners and lines. Lewen vs. Smith, 7 Porter, 435; Johnson vs. Gresham, 5 Dana, 543–4. Where sections are bounded on one side by a township line, and the line cannot be ascertained by the calls of the plat, it seems quite clear that if the corners of the adjacent sections can be found, this is better evidence to locate the township line than a resort to course merely. 1 Greenl. Ev., 369, sec. 301, note 2; 1 Richardson, 497. Where by the terms of a survey a line commences at a known monument, and from thence runs a specified distance to another monument, which latter cannot be found, the survey is limited to the distance specified to be ascertained by admeasurement. Heaton vs. Hodges, 14 Maine, 66; Galloway vs. Brown, 16 Ohio, 428. This was the course pursued by Richards, in making his survey, and it was the only principle he could adopt, in order to ascertain the true township line. Calvert vs. Fitzgerald, 1 Litt. Sel. Cas., 391–2. By the application of these principles to the facts of this case, the plaintiff and defendant are secured in the enjoyment of their respective rights, and the precise location of the disputed township line is ascertained and established.

The question as to where the township line was actually run by the government surveyor, was a question of fact, and proper for the determination of a jury. Dimmett vs. Lashbrook, 2

Dana, 1; Cockrell *vs.* McQuinn, 4 Monroe, 62–3; Doe *ex dem.* Miller *vs.* Cullam, 4 Ala., 576; Ott *vs.* Soulard, 9 Missouri, 603–4; Newman *vs.* Foster, 3 How. Miss., 383.   Where questions of fact are submitted to the Court below for trial, the decision of that Court, upon the weight and effect of the evidence, will not be set aside, unless it palpably appears that the character of the evidence was misconceived.   To induce this Court to interfere, the reasons for a new trial should be very strong and urgent.   Webster *vs.* Vickers, 2 Scam., 295; Harmon *vs.* Thornton, 2 Scam., 352; Eldridge *vs.* Huntington, 2 Scam., 535.   The same effect is to be given to the judgment of the Court upon a question of fact, submitted to its decision by consent, as to the verdict of a jury; and unless the decision is clearly, manifestly and palpably against the evidence, this Court will not grant a new trial.   Dawson *vs.* Robbins, 5 Gilman, 72.

Opinion by Mr. Justice Caton:

Where, as in a patent from the United States, the land is only described in the conveyance by numbers and quarters, we have to look at the plats and field notes of the public surveys, in order to locate the land.   These are to be considered as if incorporated into the patent itself.   In order to understand these, we must observe the system under which the surveys were made. By this system, the public lands are first surveyed into townships, six miles square, the lines of which are required to correspond with the cardinal points.   At the corners of the townships, appropriate monuments are required to be erected; between which, all along these lines, other monuments are erected, at intervals of one mile.   These townships are subsequently divided into thirty-six sections, by running parallel lines each way, from those intermediate monuments on one side of the township to the corresponding ones on the side opposite.   At the corners of the sections, where these lines cross each other, and equidistant between those corners, monuments are also erected. This divides the township into sections, and those sections into quarter sections.   Only the external lines, however, of the sections are actually run upon the ground by the original surveyor. The lines thus actually run by the surveyor become the true external boundaries of the sections, and, of course, of their subdivisions.   Where the boundaries of the subdivisions have not

been actually run, they must be ascertained by running true lines from one established point to another. The original monuments, when ascertained, afford the most satisfactory, and we may say, conclusive evidence of the lines originally run, which are the true boundaries of the tract surveyed, whether they correspond with the plat and field notes of the survey or not. All agree that courses, distances and quantities must always yield to the monuments and marks erected or adopted by the original surveyor, as indicating the lines run by him. These monuments are facts ; the field notes and plats, indicating courses, distances and quantities, are but descriptions, which serve to assist in ascertaining those facts. Established monuments and marked trees, not only serve to show with certainty the lines of their own tracts, but they are also to be resorted to, in connection with the field notes and other evidence, to fix the original location of a monument or line which has been lost or obliterated by time, accident or design. As in this case, the only monument which was required to be erected in the original survey, bordering upon the premises in question, was upon the township line at the north-east corner of section six. This original monument could not be found, and its true position is the only inquiry. The principal controversy seems to be, as to its true position north and south, which must be upon the township line running east and west. The original monuments at each extreme of this line—that is, the one five miles east and the other one mile west of the corner sought to be established, are identified, but, unfortunately, none of the original monuments and marks, showing the actual line which was run between townships five and six, can be found ; and hence we must recur to these two, as well as other original monuments, which are established in connection with the field notes and plats, to ascertain where those monuments were : for where they were, there the line was.

If the two known monuments, at the two extremes of the township line, were the only ones required to have been erected, and the line was necessarily a direct one between the two, then those monuments would have to govern, no matter how variant the line which they indicate might be from the field notes. But that the line was not necessarily straight, and, indeed, we know it could not have been, from the known imperfection of

the means employed to run it. It must have varied more or less at each monument or mark indicating it. It is this necessarily varied line we seek.

When the location of a lost corner is sought, by approaching it from others which are established, we must be guided by the best lights at command, however imperfect and unsatisfactory they may be. These, in the present instance, are principally the field notes. The law cannot satisfactorily determine, in all cases, whether the courses or distances shall govern, when they do not correspond, but that must be determined by concurring testimony, and the circumstances of each particular case. The one that convinces the judgment the most must be selected. Unless the compass is beyond the influence of disturbing causes, and the surveyor is very careful in adjusting it properly, and in noting minutely the variation at which the line is run—and we know the date of the survey—so that the increase or decrease of the variation since, can be added or deducted, no surveyor can ever feel confident that he is running even very near to the line traversed by his predecessor, and by whose minutes he is working.

In this case, Mr. Richards, who was appointed by an order of the Court, and by the agreement of the parties, to make the survey, first run a direct line from A to B, as indicated on the plat ($X$,) which he returned with his report, marked ($R$,) and which represent the known monuments at the two extremities of the township line. The result was by no means satisfactory. This line he run at a variation of $5^o 48'$. The field notes and plat from the Surveyor General's office, marked ($Y$,) do not show at what variation the original line was run. We learn, however, from the courses marked on the plat returned by the surveyor, so far as that speaks on the subject, that the other township lines, which were originally run at the same time that this was, were run at a variation of $8^o 24'$, while the variations of the sectional lines range from $8^o 24'$ to $7^o 42'$, the latter being the least found upon the plat, except the line in controversy. This disparity is sufficient to show that some gross mistake had been originally made in the course of the line. The distance, also, was found to exceed the length given in the field notes 7.59 chains. But little that was satisfactory could be gathered from the survey thus far. It must be remembered that the monuments found

38

at the two extremes of the line, were entitled to no more controlling influence, in determining the actual location of the intermediate line, than any two intermediate monuments, had they been found, and these had been missing. D and G would have served as well to find A and B, had they been lost, as the latter would to find the former. The last corner must then be approached from other known points.

The surveyor then went two miles north of the point which he was seeking to establish, at C, where he found the old corner, and run down on the east lines of sections thirty and thirty-one, verifying the accuracy of the field notes, by two original monuments which he found in his course, and fixed upon D as the position indicated for the south-east corner of section thirty-one. He then went one mile south, to E, the established south-east corner of section six, and run north upon the east line of that section, by the field notes, and struck but seventeen links south of the point previously fixed upon at D, as the supposed location of the original corner, making an offset on the same side, and variant but seven links from the field notes. Here, indeed, is a remarkable concurrence of testimony, which could hardly be accidental, and there is nothing to throw a doubt upon the accuracy of the location thus indicated, except that it is not upon a direct line between the corners of the townships at A and B, and this, as we have before seen, is entitled to but little weight. But Mr. Richards did not stop here. With the view of still further testing the accuracy of the place selected at D, he proceeded by the same process to establish the north-east corner of section five, and in doing this he had the additional advantage of the original quarter section corners, as well as section corners, on the east lines of sections five and thirty-two, except the one on the township line, which he was then seeking to locate. The result of this work was equally satisfactory, and by it the lost corner at G was also established, south of a direct line between A and B, and very nearly on a direct line between A and D.

There is too much method in all this for mere accident. According to the field notes of the original survey, the east line of section thirty-one, is just eighty chains, and by placing the disputed corner on the direct line, it would fall short 8.10 chains, while the east line of section six would exceed the length given

it by the field notes, the same distance that the other falls short, within seventeen links.   We might be obliged to admit even so gross a mistake as this, if it occurred only in one of the lines, but it would be a most remarkable circumstance, indeed, if a corresponding mistake had been made at another time in measuring another line, directly opposite and adjoining to it, by which the same amount was added to the latter which was lost in the former.   We say at different times, for the two sections being in different townships, they could not have been surveyed at the same time.   But this is not all.   Precisely the same thing occurs in the measurement of the two lines next east of these. Here is a remarkable coincidence of errors, if they be accidental.

Suppose one man had lost a purse in a particular locality, containing a particular number of dollars and cents, and another had found a purse, near the same place, containing the same number of dollars and cents, that man would be skeptical, indeed, who would doubt, without the most conclusive evidence to the contrary, that the lost purse was found, although the identity of the one lost, or of the particular pieces of coin, were not positively proved.   But suppose further, that the lost purse also contained a certain number of eagles and half eagles, and that the one found contained a corresponding number of each, belief would almost become certainty, and yet the circumstances of the case before us are as much calculated to produce conviction as those supposed.

Quantity, although the least reliable, and the last to be resorted to, of all the descriptions in a deed, in determining the boundaries of the premises conveyed, may some times be considered, in corroboration of other proof.   In this case it may not be entirely overlooked.

According to the plat of the original survey, the quarter quarter sections of which the lost monument was the corner, should contain forty acres each, which they got by placing the corner at D; whereas by moving it up into the direct line between A and B, the north-east quarter of the north-east quarter of section six would contain fifty-five acres, and the south-east quarter of the south-east quarter of section thirty-one would contain but twenty-five acres, thus making the south lot more than twice as large as the one north of it, when they should be of equal

size. This great disparity in quantity is sufficient, at least, to excite a strong suspicion that the original corner was not placed in a direct line between the two extremes of the township line.

We think that all these corroborating circumstances are entitled to more weight than the bare possibility, or even probability, that a surveyor in a wild and uninhabited country, with no one to immediately superintend his work, did run a line six miles long, perfectly straight, as his instructions required that he should.

The finding of the Court below, thus supported by evidence, should not be disturbed.

The judgment of the Circuit Court is affirmed, with costs.

*Judgment affirmed.*