SIMON B. CONOVER, APPELLANT, VS. JOHN C. RUSS,
APPELLEE.

EJECTMENT—MAPS AS EVIDENCE.

Where the land in controversy in an ejectment suit is located adjacent to the boundary line between two counties, the location of which boundary line is involved in such doubt, uncertainty and dispute as to render it seriously doubtful as to which of said two counties said land belongs, and the defendant relies entirely upon a tax title to the land, acquired in one of such counties ; and it appears that the land was assessed and sold for the same year's taxes in both counties; and the plaintiff has redeemed from the sale in one of them, but not from the sale in the county that resulted in defendant's tax title. The material issue, under these circumstances, that most vitally affects the validity of such tax title, is the true *locus* of the land. In the trial of this issue the official maps of the county in which the plaintiff claimed the land to be, and from the tax sale in which he redeemed them, are entirely proper and highly pertinent evidence to throw light upon the leading fact in issue, the true *locus* of such land ; and it is error to exclude such maps from evidence, when they show the land to be part of the county in which the tax redemption has been made.

Appeal from the Circuit Court for Orange county.

The facts in the case are stated in the opinion of the court.

*Chas. Swayne* for Appellant.

*Mershon & Rogers* and *M. Silver* for Appellee

(Judge Malone, of the Second Circuit, sat in the place of Mr. Justice Mabry, who was disqualified.)

TAYLOR, J. :

Simon B. Conover, as plaintiff in the court below, on the 20th day of January, A. D. 1886, instituted his action of ejectment in the Circuit Court of Orange county, in the 7th Judicial Circuit, against the appellee, John C. Russ, to try the title to, and recover the possession of, the following described lands : Lots 1, 2, 3 and 4 of section 12, in township 20, south, of range 26, east. To the declaration the defendant pleaded the general issue.   The cause was tried before a jury in Orange county on the 13th of June, 1887, and resulted in a verdict for the defendant, Russ.   The plaintiff moved for a new trial upon divers grounds, which being de-nied, judgment was entered for the defendant, and from this judgment the plaintiff, Conover, appeals to this court.   From the conclusions we have reached after a careful consideration of the case, some discussion of the evidence becomes necessary.   The plaintiff to prove the issues on his behalf introduced a deed to himself as grantee, made by the Board of Trustees of the Internal Improvement Fund of Florida, dated the 23d of February, A. D. 1869, in which deed the said lands are described as "lying and being in Sumter county, Florida," which deed, as appears from the endorsements thereon, was duly recorded in the Sumter county records on the 23d of May, 1871.   The plaintiff then offered in evidence a certified transcript from the as-

sessment rolls of Sumter county showing that the lands
in question were assessed for taxes in Sumter county,
for the years 1878, 1882, 1884, 1885, 1886 and 1887, ac-
companied by a certified copy of a portion of the map
of Sumter county used and recognized by the officials
of that county, that included the lands in question and
other adjacent lands along and near the supposed
boundary line between the counties of Sumter and Or-
ange for the purpose of showing that said land lay in
Sumter county at that time. This certified transcript
of records and map of Sumter county were ruled out
by the court, which ruling we think was erroneous.
From the further developments at the trial it became
evident that the defendant, Russ, claimed the land
solely under a tax deed acquired from the officers of
Orange county, in pursuance of an alleged assessment
and sale of the land for taxes for the year 1877 in Or-
ange county ; and it was further developed that the
same land was assessed for taxes for that year (1877)
in Sumter county, and sold to the State for such taxes
in Sumter county, and that Conover, the plaintiff, re-
deemed the same from the State and paid the taxes for
the year 1877, that had been assessed thereon in Sum-
ter county. The relative rights of the parties, plaintiff
and defendant, depended then, in great measure, upon
the solution of the fact as to whether these lands in
the year 1877 formed a part of the territory of Sumter,
or that of Orange county. If the land at that time
formed a part of the territory of Sumter county, then
it follows as a matter of course that the assessment
and sale thereof for the taxes of that year in Orange

county were a nullity, and that Russ acquired no title whatever by his tax deed made in Orange county. For this reason it became highly important at the trial to establish the fact clearly as to which of the two said counties this land belonged in 1877. And as the land was located quite near to or upon the boundary line between the two, and as the exact location of that boundary line was enveloped in much obscurity, uncertainty, doubt and dispute, both counties continuing after the year 1877 to assess this land as part of their respective territory, we think that the maps of Sumter county, offered in evidence by the plaintiff and ruled out by the court, became not only competent, but entirely proper and highly pertinent evidence in the cause, as throwing light upon the leading fact in issue, the proper *locus* of the land. Tate vs. Gray's Lessee, 1 Swan, 73 ; Carmichael vs. Trustees, 3 How. (Miss.), 84 ; McClintock vs. Rogers, 11 Ill., 279 ; Steele's Heirs vs. Taylor, 3 Marshall (Ky.), 225 ; Bruce vs. Taylor, 2 Marshall (Ky.), 160 ; Alexander vs. Lively, 5 Monroe (Ky.), 159 ; Doe vs. Hildreth, 2 Ind., 274 ; Den vs. VanHouten, 2 Zabriskie (N. J. Law), 61. We think the ruling of the court excluding these maps of Sumter county was such fatal error, and of such damaging effect upon the plaintiff's rights in the premises that it is cause for reversal ; and having arrived at this conclusion, we deem it unnecessary to notice any other questions presented.

The order of the court is, that the judgment of the court below is reversed, and that a new trial be granted.