EDWARD MENDEL

*v.*

JOHN F. WHITING *et al.*

*Filed at Ottawa June 20, 1892.*

1. DEED—*description of land by reference to a plat.* Where land is purchased and conveyed as a designated lot in a designated block and subdivision, and no other description is given of it, then the authentic plat of such subdivision is as much a part of the deed as if set out in it, and the purchaser will be restricted to the boundaries of the lot as shown by the plat.

2. A party took a conveyance for five acres by metes and bounds, which described the land as being a part of the east half of the south-west quarter of section 34, etc., commencing at a point on the east line of said east half of the south-west quarter, ten chains south of the north-east corner thereof; thence south on said east line five chains; thence west ten chains; thence north parallel with said east line five chains; thence east ten chains to the beginning, making the land three hundred and thirty feet from north to south by six hundred and sixty feet from east to west. This land was subdivided into blocks and lots as the north half of the south-east quarter of the north-east quarter of the south-west quarter of section 39, which in fact was six hundred and sixty three and one-tenth feet south of the quarter section line, and not six hundred and sixty, as was the case in the description in the deed. The owner afterward sold and conveyed the strip of three and one-tenth feet lying north of the subdivision. An owner of one of the north lots claimed this strip: *Held,* that such owner was not entitled to hold the same as against the grantee from the party who laid out the subdivision.

APPEAL from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Mr. JESSE HOLDOM, for the appellant.

Messrs. FAY & GRIGGS, for the appellees.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This is ejectment brought by Edward Mendel, the appellant, against the appellees, for the recovery of a strip of land three and one-tenth feet in width by one hundred and sixty-five and ninety-seven one-hundredths feet in depth. The common source of title is one Mary P. Moody. By deed dated June 1, 1889, said Moody quit-claimed said strip of ground to appellant, who is the owner of the premises adjoining it on the north, and such conveyance *prima facie* establishes his title.

Appellees are in possession of the premises in controversy, John F. Whiting as surviving husband, and the other appellees as children and heirs-at-law, of Mary T. Whiting, deceased. Said Mary T. Whiting was the remote grantee, through various *mesne* conveyances, of Mary P. Moody, and her chain of title from the common source commenced with a deed from said Moody to Ellen Mullin, bearing date September 7, 1868, and all the deeds through which she claimed title described the property conveyed as lot 22, in block 1, in Moody's subdivision of the north half of the south-east quarter of the north-east quarter of the south-west quarter of section 34, township 39, north, range 14, east of the third principal meridian, situate in the city of Chicago, county of Cook, and State of Illinois. The material question at issue seems to be, whether or not the strip of ground in contention is a part of said lot 22, block 1.

On August 1, 1867, Chester G. Russell and wife conveyed, by warranty deed, to Mary P. Moody, certain real estate, and described the same by metes and bounds, as follows, to-wit: "A tract of land in Cook county, Illinois, it being part of the

E. $\frac{1}{2}$ of S. W. $\frac{1}{4}$ of section 34, T. 39, N., R. 14, E. of 3d P. M., and bounded as follows: Beginning at a point on east line of said E. $\frac{1}{2}$ of S. W. $\frac{1}{4}$, ten chains south of north-east corner thereof; thence south on said east line five chains; thence west ten chains; thence north parallel with said east line five chains; thence east ten chains to the beginning, containing five acres of land." The acknowledged and recorded plat of the subdivision of the land, which was recorded August 28, 1868, is entitled, "Plat of Moody's subdivision of part of the east half ($\frac{1}{2}$) of south-west quarter ($\frac{1}{4}$) of section thirty-four, T. 39, R. 14," and the surveyor's certificate, dated August 2, 1868, certifies that said surveyor has surveyed "the N. $\frac{1}{2}$ S. E. $\frac{1}{4}$ N. E. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$ of section 34, Town 39, range 14, east," and has subdivided the same into lots, which are correctly represented on the annexed plat, approved by board of public works August 22, 1868. Lot 22, block 1, as designated on said plat, is in the northern tier of lots, fronts east on Calumet avenue, and is thirty feet wide by one hundred and twenty-four feet deep; but since then the South Park Commissioners have opened on the west what is known as the "Grand Boulevard," and said lot and the adjoining lots now front west on said Grand Boulevard.

The conveyance of Russell to Moody was by metes and bounds of a piece of land three hundred and thirty feet from north to south, by six hundred and sixty feet from east to west, the north line of which was six hundred and sixty feet south of the north line of the quarter section. The subdivision, as seems to be indicated by the plat and the certificate of the surveyor, was of an aliquot part of the quarter section, *i. e.*, of the north half of the south-east quarter of the north-east quarter of the south-west quarter. Now, if the south-west quarter section contained just one hundred and sixty acres, no more and no less, then the lines of the land described by metes and bounds in the deed would coincide with the lines of the aliquot part of the quarter section that the surveyor certifies that he

surveyed and subdivided, but according to the uncontradicted testimony of Mr. Greely, a surveyor of some thirty-seven years' experience in Chicago, and of Mr. Carlson, a surveyor, the extent of whose experience is not shown, the south-west quarter of section 34 contains a surplus of land, and the north line of the aliquot part of the quarter section, that the certificate of the surveyor states was surveyed and subdivided, is six hundred and sixty-three and one-tenth feet south, instead of six hundred and sixty feet south of the quarter section line.

The question involved is simply a question of legal title. Mary T. Whiting and the several grantees subsequent to the subdivision took title by deeds, which conveyed lot 22, in block 1, in Moody's subdivision of the north half of the south-east quarter of the north-east quarter of the south-west quarter of section 34, etc. Where land is purchased and conveyed as a designated lot in a designated block and subdivision, and no other description is given of it, then the authentic plat of such subdivision is as much a part of the deed as if set out in it, and the purchaser will be restricted to the boundaries of the lot as shown by the plat. *McClintock* v. *Rogers*, 11 Ill. 279; *McCormick* v. *Huse*, 78 id. 363; *Louisville and Nashville Railroad Co.* v. *Koelle*, 104 id. 455; *Piper* v. *Connelly*, 108 id. 646; *Trustees of Schools* v. *Schroll*, 120 id. 509. The certificate of the surveyor, as well as the plat, was required by law to be recorded, and both were, in fact, recorded; and the plat so certified, and purporting to be a plat of a subdivision of an aliquot part of the quarter section,—*i. e.*, of the north half, etc.,—as above stated, affords presumptive evidence, when considered in connection with the unimpeached evidence of Greeley and Carlson, that the north line of the subdivision which was actually surveyed and made was six hundred and sixty-three and one-tenth feet south of the quarter section line, and not six hundred and sixty feet south of said line. And the plat shows that the north line of lot 22 is coincident with the north line of the subdivision.

We do not wish to be understood as holding that if the occupancy by the purchasers of lots in the subdivision, and the improvements by them on their several lots, were in conformity with lot lines based on the theory that in the subdivision into lots the north line of the north tier of lots coincided with the north line of the land that was conveyed by Russell to Mrs. Moody, then the presumption arising from the plat and the certificate of the surveyor would be sufficient to overcome the probative force of such actual occupancy under deeds for lots, and such recognition by the parties interested in the title of the fact that the actual location of the lots by the subdivision had reference to and was in accordance with the north line of the land that was bought from Russell. But such is not the case disclosed by the record. All the evidence introduced at the trial is directly to the contrary, and is strongly corroborative of the claim that a strip of ground three and one-tenth feet in width along the north line of the land so purchased was not included in the survey and subdivision. The land was divided from north to south into four tiers of lots, each tier containing eleven lots, and each lot thirty feet wide. The effect of such a subdivision, if the north line of the subdivision was in coincidence with an east and west line six hundred and sixty-three and one-tenth feet south of the quarter section line, would be to throw the south line of the south tier of lots, as platted, over on the premises of the adjoining land owner on the south,—a distance of three and one-tenth feet. Such, as appears in evidence, is the actual state of the case here, for although lot 12, the south lot in block 1, is platted as being thirty feet in width, yet the occupancy of such lot covers a width of only twenty-six and nine-tenths feet, and runs merely to the south line of the property conveyed by the Russell deed, and the occupancy and building of the property owner on the south come north to the same line. The evidence shows that lots from 1 to 11, inclusive, of block 1, constituting the easterly tier, from north

to south, have been taken for the Grand Boulevard, and the uncontradicted evidence is, that the occupancy, houses, fences and improvements on lots 21, 20, 17, 16, etc., and the occupancy of the lots generally fronting on Forest avenue and on the Grand Boulevard, and of the lots in Moody's subdivision, is all in accordance with the lines of the lots, assuming that the north lots of the subdivision do not include any portion of a strip of land three and one-tenth feet in width along the north line of the land deeded by Russell, and that such occupancy, houses, fences and improvements are three feet south of where they would be, assuming the north line of the subdivision to coincide with the north line of the land conveyed by the Russell deed. Moreover, the evidence is that the north line of the building of appellees on lot 22 is three and one-tenth feet south of the north line of the land deeded by Russell to Moody, and that at the time of the conveyance of said lot 22 to Mrs. Whiting, her husband and agent, who is one of the appellees herein, was informed by a surveyor that there was a strip of land three and one-tenth feet wide, lying north of and adjoining the north line of said lot 22, the title of which was still in Mrs. Moody.

It is contended by appellees that appellant can not prevail because no stake or monument of the original subdivision is located or identified by the evidence. The record of the subdivision was destroyed in the great fire, and the ante-fire abstract introduced in evidence does not disclose what was the permanent monument of the subdivision, or where it was located or placed, or even that any such monument was planted or referred to. If there was satisfactory evidence in regard to such a monument it would probably dispose of this controversy, and settle the rights of the parties beyond any cavil. The evidence seems to indicate that in the twenty-two years intervening the making of the subdivision and the trial of the cause great changes took place in this portion of the city of Chicago, and it is improbable that any stakes placed by the

surveyor of the plat are still in existence. It is probable that stakes or monuments of some sort were planted by the surveyor, and that the purchasers of lots, or some of them, occupied the lots purchased and built their houses and fences in conformity with the lines and corners indicated by such stakes; and, this being so, it is significant that the uniform occupancy and rule of improvement that has prevailed for more than twenty years are predicated upon the theory that it was an aliquot part of the quarter section that was subdivided, and not the tract of land that was deeded to Mrs. Moody by metes and bounds that was subdivided. The case of appellees themselves is not justly an exception to this uniformity, for lot 22 was not sold and conveyed to Mrs. Whiting until 1886, and she had actual notice that said lot did not include the strip of land in controversy. She bought the lot knowing that it was platted as a lot thirty feet wide, and appellees, claiming as surviving husband and heirs under her title, are in possession not only of a lot thirty feet wide, but also of a strip of land adjoining, which is three and one-tenth feet in width, which was not included in the conveyance to her. The case of appellant would be stronger if it was fortified by proof of the location of monuments or stakes of the original survey of the subdivision; but without such proof it, in our opinion, establishes a *prima facie* case for appellant. Appellees introduced no testimony at the trial, but relied upon the supposed weakness of the case made by appellant. It may be that at another trial evidence can be introduced which will materially change the aspect of the case as disclosed by this record.

We think that the circuit court erred in finding the issues for appellees, in overruling the motion of appellant for a new trial, and in rendering judgment in favor of appellees and against appellant.

The judgment is reversed and the cause remanded.

*Judgment reversed.*